**CARLSON LYNCH, LLP**
Eric D. Zard (CA Bar #323320)
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:    619-762-1910
Fax:    619-756-6991
ezard@carlsonlynch.com

*Counsel for Plaintiff and Proposed Class*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ALVIN KANG, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant. | |

Plaintiff, Alvin Kang ("Plaintiff"), by and through his undersigned counsel, brings this class action against Defendant, the Regents of the University of California (the "Regents" or "Defendant"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to him, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all persons who paid, or will pay, tuition, housing (if living on campus), and/or fees to attend the University of California (the "University")[1] for an in-person, hands on education for the Spring term, and any future term (including any other categorization of an academic period such as semester, quarter, and/or session, in which students paid

---

[1] Including all campuses in the University of California system: UC Berkeley, UC Davis, UC Irvine, UCLA, UC Merced, UC Riverside, UC San Diego, UC San Francisco, UC Santa Barbara, and UC Santa Cruz.

for in-person education and services and lost the benefit of their bargain dur to COVID-19) (collectively, the "Terms") and had their course work moved to online learning. Such persons paid all or part of the tuition, housing fees, and mandatory student fees that varied depending upon which institution in the University system the student was enrolled.[2]

2.       The University has not refunded any amount of the tuition or Mandatory Fees, even though it ceased in-person learning since mid-March 2020. The University has also not refunded any amount of the housing fees for students who were unable to move out by certain strict move-out dates.

3.       Due to the University's response to the Coronavirus Disease 2019 ("COVID-19") pandemic, by mid-March, the University ceased or severally limited any of the services or facilities that tuition, housing, and Mandatory Fees were intended to cover.

4.       The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since mid-March, is a breach of the contracts between the University and Plaintiff and the members of the Class, and is unjust.

5.       The University only provided prorated refunds to students for housing who vacated their campus housing by a certain date, which varied depending upon which campus the student attended. Those students who did not move out of University housing until after the respective move-out dates should also be entitled to a prorated refund.

6.       In short, as to tuition, Plaintiff and the members of the Class have paid tuition for a first-rate education and educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a breach of the contracts entered into by Plaintiff and the Class with the University.

7.       As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which were simply not provided; this failure also constitutes a breach of the contracts entered into by Plaintiff and the Class with the University.

8.       As a result of the breaches of contract, the University unlawfully seized and are in possession of property (funds) of the Plaintiff and Class members in the form of paid tuition, housing, and Mandatory Fees.

---

[2] https://students.ucsd.edu/finances/fees/registration/2019-20/index.html

9.      Plaintiff seeks, for himself and Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees proportionate to the amount of time in the Terms when the Universities switched to online distance learning, and in the case of housing, pro-rated portion of the housing fees proportionate to the amount of time that remained in each housing contract after each student moved out.

## PARTIES

10.     Plaintiff Alvin Kang is a citizen of Los Angeles.  He paid to attend the Winter 2020 Quarter and Spring 2020 Quarter at the University of California San Diego ("UCSD") as a full-time undergraduate student.

11.     Plaintiff paid tuition, housing and the Mandatory Fees for the Winter 2020 Quarter and Spring 2020 Quarter to enable him to obtain an in-person, on-campus educational experience, on-campus housing, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.

12.     Plaintiff has not been provided a pro-rated refund of the tuition, housing, or Mandatory Fees even though his in-person classes were discontinued and moved online, he moved out of University housing, and the University's facilities were closed or access was severally limited and events and gatherings were cancelled.

13.     The University of California is the world's leading public research university system, with ten universities, five medical centers and three national labs. The ten universities within the University of California system, and under the control of the Regents of the University of California, are: UC Berkeley, UC Davis, UC Irvine, UCLA, UC Merced, UC Riverside, UC San Diego, UC San Francisco, UC Santa Barbara, and UC Santa Cruz.

14.     The University is governed by the Regents of the University of California, established under Article IX, Section 9 of the California State Constitution.

15.     According to Article IX, Section 9 of the California State Constitution, the Regents of the University of California is a corporate body that can sue and be sued.

16.     The University and Regents are instrumentalities of the State of California.[3]

---

[3] *BV Eng'g v. Univ. of California, Los Angeles,* 858 F.2d 1394, 1395 (9th Cir. 1988).

17.     The University offers numerous major fields for undergraduate students, as well as a number of graduate programs. Defendant's undergraduate program includes students from many, if not all, of the states in the country.

18.     The Regents' headquarters is located in Oakland, California. Defendant is a citizen of California.

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

20.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS.

22.     Plaintiff and Class Members paid or will pay to attend the University of California during the Terms, including tuition, housing (if living on campus), and the Mandatory Fees.

23.     The Winter 2020 Quarter at UCSD began on or about January 2, 2020, and ended on or around March 21, 2020. The Spring 2020 Quarter at UCSD began on or about March 25, 2020, and ended on or about June 12, 2020. The Summer Sessions are scheduled to commence on June 29, 2020, and is scheduled to end on or about September 4, 2020.[4]

24.     Tuition and Mandatory Fees for undergraduate students at UCSD for the Winter and Spring Quarters vary based on whether the student is a California resident, and are as follows:

---

[4] https://blink.ucsd.edu/instructors/resources/academic/calendars/2019.html

CLASS ACTION COMPLAINT

| Registration Fees | Fall 2019 | Winter 2020 | Spring 2020 | Annual Total |
|---|---|---|---|---|
| Registration Fee Payment Deadline | 9/20/2019 | 12/13/2019 | 3/20/2020 | |
| **UC System Fees** | | | | |
| Student Services Fee | $376.00 | $376.00 | $376.00 | $1,128.00 |
| Tuition | $3,814.00 | $3,814.00 | $3,814.00 | $11,442.00 |
| **UC San Diego Fees** | | | | |
| Campus Activity Fee | $73.06 | $73.06 | $73.06 | $219.18 |
| University Center Fee | $101.46 | $101.46 | $101.46 | $304.38 |
| Recreation Facility Fee:<br>• RIMAC Facility $95<br>• Canyonview Facility $22 | $117.00 | $117.00 | $117.00 | $351.00 |
| ICA Student Activity Fee | $259.04 | $259.04 | $259.04 | $777.12 |
| Health Insurance | $680.00 | $680.00 | $680.00 | $2,040.00 |
| Student Transportation Fee | $64.58 | $64.58 | $64.58 | $193.74 |
| **Total for California Residents** | **$5,485.14** | **$5,485.14** | **$5,485.14** | **$16,455.42** |
| **UC San Diego Nonresident Fees** | | | | |
| Nonresident Supplemental Tuition | $9,918.00 | $9,918.00 | $9,918.00 | $29,754.00 |
| **Total for California Nonresidents** | **$15,403.14** | **$15,403.14** | **$15,403.14** | **$46,209.42** |

[5]

25.     Tuition costs for graduate students at UCSD are as follows:

| Cost of Attendance | Living with Parents | On Campus | Off Campus |
|---|---|---|---|
| CA Resident Tuition/Fees[a, b, d] (View Components) | $17,355 | $17,355 | $17,355 |

UC Systemwide Tuition/Fees: $12,570
UC San Diego Campus Fees: $885
UC San Diego Health Insurance Fee: $3,900

[6]

26.     Tuition and Mandatory Fees at UCSD for Summer sessions are estimated as follows:

# ESTIMATE YOUR SUMMER FEES

To estimate your fees for courses at UC San Diego use the example below (all fees are subject to change)

**Course fees** = $279 per unit (undergraduate); $349 per unit (graduate)

**Undergraduate example:** $279 x 4 units = $1116.00 per 4-unit class

**Additional campus-based fees** listed below ($238.75 per session)

- ICA Student Activity Fee (undergraduate only) $129.52 per session
- Recreation Facility Fee, $58.50 per session
- University Center Fee, $50.73 per session

Some courses may require material fees; all students enrolled in those courses pay the material fee. Refer to the Summer Session website for further information.

[7]

---

[5] https://students.ucsd.edu/finances/fees/registration/2019-20/index.html
[6] https://fas.ucsd.edu/cost-of-attendance/graduate-students/index.html
[7] https://fas.ucsd.edu/summer-session/index.html

27.     UCSD also charges additional fees dependent upon the student's year of enrollment, and program in which they enroll:

**Important notes:**

- **Health Insurance:** Health insurance is required as a condition of enrollment. Students are automatically enrolled in the Student Health Insurance Plan (SHIP) however, students already covered by an insurance plan may qualify for a health fee waiver. Please see the Student Health Insurance Plan page for more information, including waiver criteria, submission process and deadline.

- **Additional Undergraduate College Fees:** All new UC San Diego first-year students will be billed an average one-time Orientation fee of $181.00 and new transfers an average one-time Orientation fee of $120.00. Students in the following colleges are assessed an additional college activity fee **per quarter:** Muir, $17.00; Revelle, $9.00; Thurgood Marshall, $10.50; Warren, $8.84; Eleanor Roosevelt, $12.50; Sixth, $12.08.

- **Document Fee (one-time, newly admitted students) (PDF):** $165

- **International Student Visa Administration Fee (PDF):** $100 [8]

28.     Housing at UCSD are contracted for in combination with dining, and are as follows:

| Payment in Full | (Includes $3,400.00 Dining Dollars) | | | (Includes $5,100.00 Dining Dollars) | | |
|---|---|---|---|---|---|---|
| | Single Rm | Double Rm | Triple Rm | Single Rm | Double Rm | Triple Rm |
| Housing & Dining Cost | $ 13,481.00 | $ 12,498.00 | $ 11,554.00 | $ 15,181.00 | $ 14,198.00 | $ 13,254.00 |
| Activity Fee | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 |
| Subtotal | $ 13,501.00 | $ 12,518.00 | $ 11,574.00 | $ 15,201.00 | $ 14,218.00 | $ 13,274.00 |
| Less: Prepayment due w/ contract | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) |
| **Total Full Balance** | $ 13,051.00 | $ 12,068.00 | $ 11,124.00 | $ 14,751.00 | $ 13,768.00 | $ 12,824.00 |
| **Quarterly Installment Plan** | | | | | | |
| Fall Quarter Installment | 4,761.00 | 4,434.00 | 4,118.00 | 5,327.00 | 5,000.00 | 4,686.00 |
| Administrative Fee | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| Activity Fee | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 |
| Less: Prepayment due w/ contract | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) |
| **Fall Quarter Total Balance** | $ 4,361.00 | $ 4,034.00 | $ 3,718.00 | $ 4,927.00 | $ 4,600.00 | $ 4,286.00 |
| **Winter Quarter Installment** | $ 4,360.00 | $ 4,032.00 | $ 3,718.00 | $ 4,927.00 | $ 4,599.00 | $ 4,284.00 |
| **Spring Quarter Installment** | $ 4,360.00 | $ 4,032.00 | $ 3,718.00 | $ 4,927.00 | $ 4,599.00 | $ 4,284.00 |
| **Monthly Installment Plan** | | | | | | |
| 1st monthly installment | 1,857.00 | 1,746.00 | 1,642.00 | 2,045.00 | 1,934.00 | 1,830.00 |
| Administrative Fee | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 |
| Activity Fee | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 |
| Less: Prepayment due w/ contract | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) | (450.00) |
| **First Month Total Balance** | $ 1,457.00 | $ 1,346.00 | $ 1,242.00 | $ 1,645.00 | $ 1,534.00 | $ 1,430.00 |
| **2nd Through 9th Installments** | $ 1,453.00 | $ 1,344.00 | $ 1,239.00 | $ 1,642.00 | $ 1,533.00 | $ 1,428.00 |

*Note: Housing & Dining Cost is based on 236 days* [9]

29.     Although tuition, housing, and Mandatory Fees at UCSD are generally billed per Quarter, other campuses in the University system typically bill per semester.

30.     Regardless of the categorization or number of Terms that each institution has, the tuition for a full academic year is uniform across each campus in the University system, with housing and Mandatory Fees being variable by campus:

*\* California resident undergraduates at all UC campuses pay the same $12,570 in systemwide tuition and fees. The fees figure above includes the average cost of additional campus-based fees. Your total costs will vary depending on your personal expenses and the campus you attend. All fees are subject to change without notice.* [10]

---

[8] *Id.*
[9] https://hdh.ucsd.edu/housing/docs/housing-payment-schedule-rh-2019-20.pdf
[10] https://admission.universityofcalifornia.edu/tuition-financial-aid/tuition-cost-of-attendance/

31.    Plaintiff and the members of the Class paid all or part of the applicable tuition for the benefit of on-campus live interactive instruction and an on campus educational experience throughout the entirety of the Terms.

32.    Plaintiff and the members of the Class paid housing for the benefit of on-campus University housing throughout the entirety of the Terms.

33.    Plaintiff and the members of the Class paid the Mandatory Fees for each of the Terms so that they could benefit from certain services, organizations, recreational activities, and transportation.

34.    The Mandatory Fees at UCSD were intended to cover the following during the Terms:

**Student Services fee**

Covers services that benefit the student and are complementary to, but not part of, the instructional program.

**Tuition (formerly Education fee)**

Covers part of the cost of the student education at the University of California.

**Campus activity fee**

Voted by a student referendum to support student activities on campus.

**University Center fee**

Covers construction and operation of the Student Centers.

**Recreation facility fee**

Voted by a student referendum to support student recreation on campus.

**ICA student activity fee (undergraduates only)**

Supports UCSD intercollegiate athletic teams.

**Graduate Association fee (graduate students only)**

Supports social, cultural, and education events for graduate students.

**Student Transportation fee**

Voted by student referendum to support mass-transit services to students.

**Health insurance**

Provides health insurance for all undergraduate, graduate, and professional students.

**One-Time Document Fee**

One-time fee allows for standard processing of transcripts, verifications, co-curricular records and first replacement diploma.  [11]

35.    The University has retained the value of the tuition, housing (if living on campus), and Mandatory Fees, while failing to provide the services for which they were paid.

---

[11] https://students.ucsd.edu/finances/fees/registration/explanation.html

CLASS ACTION COMPLAINT

36.     Members of the Class have demanded the return of the prorated portion of tuition, housing, and Mandatory Fees, and have taken to online petitions to demand the same.[12]

37.     Despite the demand from members of the Class, the University has not provided any refund of the tuition and Mandatory Fees and continues to retain the monies paid by Plaintiff and the Class. As to housing, the University has only provided refunds to those students who moved out by certain move-out dates.

38.     Plaintiff's counsel sent Freedom of Information Act (FOIA) requests to Defendant and each campus of the University system in order to, *inter alia*, gain access to the internal communications regarding issuing potential refunds and reimbursements to the students, and the ultimate denial of same. If any information received proves directly relevant, which Plaintiff fully expects, Plaintiff shall amend the Complaint to incorporate same**.**

### *In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities and Services, and Cancelled All In-Person Classes*

39.     In response to the COVID-19 pandemic, UCSD created a new section for its website to post news alerts and updates, and to answer frequently asked questions.[13]

40.     On March 9, 2020, UCSD announced that it was cancelling all events and meetings of more than 100 people, that university athletics will continue but only without spectators, and that starting in the Spring Quarter, all lectures will be delivered through remote online learning only.[14]

41.     On March 11, 2020, UCSD announced that it was going to cancel all in-person final exams for the Winter Quarter, and that all such exams were to be take home or administered remotely.[15]

---

[12] https://www.change.org/p/howard-gillman-refund-student-housing-for-spring-quarter-at-uc-irvine?recruiter=578008061&utm_source=share_petition&utm_medium=facebook&utm_campaign=petition_dashboard&recruited_by_id=5d2c3ad0-51e1-11e6-a9f2-118d666bfad5&utm_content=starter_fb_share_content_en-us%3Av1; https://www.change.org/p/howard-gillman-refund-student-housing-for-spring-quarter-at-uc-irvine?recruiter=578008061&utm_source=share_petition&utm_medium=facebook&utm_campaign=petition_dashboard&recruited_by_id=5d2c3ad0-51e1-11e6-a9f2-118d666bfad5&utm_content=starter_fb_share_content_en-us%3Av1.
[13] https://returntolearn.ucsd.edu/news-and-updates/updates-to-campus/index.html
[14] http://adminrecords.ucsd.edu/Notices/2020/2020-3-9-2.html
[15] http://adminrecords.ucsd.edu/Notices/2020/2020-3-11-1.html

42.     On March 12, 2020, UCSD announced that all athletic activities at UCSD were to be suspended indefinitely.[16]

43.     On March 13, 2020, UCSD announced that it would be providing refunds for housing only to those students who move out by March 29, 2020, but that tuition and fees will not be refunded or discounted:

> HOUSING
>
> UC San Diego on-campus housing communities will remain open and operational for Spring Quarter. Housing, Dining and Hospitality (HDH) and Residential Life will continue to support students who choose to reside on campus.
>
> Undergraduate and graduate residents who choose to complete their academic quarter remotely and would like to move out of campus housing should do so by March 29. More information about opting out of your contract can be found at this link: https://hdhhome.ucsd.edu/hdh-covid-19-faq.html
>
> TUITION & FEES
>
> Consistent with guidance from the UC Office of the President, for all enrolled students, tuition and fees remain unchanged as the campus remains operational.[17]

44.     On March 20, 2020, UCSD again strongly encouraged students to move out of housing and off campus. UCSD further advised that students should not come to campus to take advantage of certain facilities and services such as UCSD's internet.[18]

45.     On March 23, 2020, UCSD announced that it has changed the traditional single letter grading system to provide for an optional "Pass/No Pass" or "Satisfactory/Unsatisfactory" indication.[19]

46.     On March 29, 2020, in tacit acknowledgment that the remote online learning format is sub-par in practically every way, UCSD made the following statement regarding anticipated issues:

> Instructors and staff have been busy preparing for today, working to create a smooth transition to virtual formats. This quick turn-around means there will be bumps. We ask that everyone practice courtesy during the first two weeks of the quarter as we all find our bearings and adjust. We are all in this together, so be kind to one another, help each other over the phone and online when possible, and extend patience, empathy and compassion when experiencing hurdles.[20]

---

[16] https://ucsdtritons.com/news/2020/3/12/statement-from-uc-san-diego-athletics.aspx
[17] http://adminrecords.ucsd.edu/Notices/2020/2020-3-13-4.html
[18] http://adminrecords.ucsd.edu/Notices/2020/2020-3-20-4.html
[19] http://adminrecords.ucsd.edu/Notices/2020/2020-3-23-1.html
[20] http://adminrecords.ucsd.edu/Notices/2020/2020-3-29-1.html

CLASS ACTION COMPLAINT

47.   On April 9, 2020, UCSD announced that it will be extending remote online learning throughout the Summer 2020 Sessions.[21]

48.   UCSD has not held any in-person classes since March 13, 2020.  Classes that have continued since that time have only been offered in a remote online format with no in-person instruction or interaction.

49.   UCSD has expressly provided that they will not be reimbursing any amount for tuition of Mandatory Fees paid by Plaintiff and the Class.

50.   Each campus in the University system has reacted in a substantially similar manner; namely, transitioning classes to sub-par remote online learning, providing strict move-out dates to receive housing refunds, and failing to provide services and facilities at each institution that the Mandatory Fees were paid for, all while retaining tuition, housing (if unable to move out prior to the move-out date), and Mandatory Fees.

### _The University's Online Courses Are Subpar to In-Person Instruction, For Which Plaintiff and the Class Members Contracted with the University to Receive by Paying Tuition and Fees_

51.   Students attending the University during the Terms did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program.

52.   On its website, UCSD markets its on-campus experience as a benefit of enrollment by stating:

Sun. Sea. Surfing. Our campus at UC San Diego has plenty of obvious charms.[22]



[23]

---

[21] http://adminrecords.ucsd.edu/Notices/2020/2020-4-9-1.html
[22] https://admission.universityofcalifornia.edu/campuses-majors/san-diego/.
[23] https://www.ucsd.edu/

CLASS ACTION COMPLAINT

# COLLEGE IS MORE THAN STUDYING

It's a time to challenge preconceived notions and pursue your passions. So jump in. Lead a student organization. Discover new lands through study abroad. Join an intercollegiate team. Volunteer in the community. Now is the time![24]

53.     The University's marketing of on-campus benefits applies to all campuses, not just UCSD. For example:

Davis is a college town, with a friendly, laidback feel that is quintessential California. You'll find 35,000 thinkers, dreamers, and change-makers studying over 100 majors here. Academic excellence waits around every corner (and with 5,300 acres, there are plenty of corners).[25]

With its jaw-dropping coastline, lush state forests and cosmopolitan vibe, UC Santa Cruz offers a lifestyle that's tough to beat. And as one of the world's top 50 universities, it has a world-class reputation to match.[26]

Life at Berkeley doesn't stand still. With over 35,000 students from around the world and a vibrant urban setting, it's no wonder the campus community talks about a "fear of missing out." Jump in and find out how dynamic and interconnected life at Berkeley can be.[27]

54.     The online learning options being offered to the University's students are sub-par in practically every aspect as compared to what the educational experience afforded Plaintiff and the members of the Class once was.  During the online portion of the Terms, the University offered some classes through Zoom. Other classes, however, stopped providing the students with any lectures at all and required that the students learn on their own and turn in assignments when due.  Therefore, there was a significant lack of classroom interaction among teachers and students, and among individual students that is instrumental in interpersonal skill development.

---

[24] https://ucsd.edu/campus-life/index.html?_ga=2.113837313.708035804.1593179956-1958858026.1593179956
[25] https://admission.universityofcalifornia.edu/campuses-majors/davis/.
[26] https://admission.universityofcalifornia.edu/campuses-majors/santa-cruz/.
[27] https://www.berkeley.edu/campus-life

CLASS ACTION COMPLAINT

55.     The online formats being used by the University do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

56.     Further, the ability to receive a Pass/No Pass or Satisfactory/Unsatisfactory grade provides educational leniency that the students would not otherwise have with the traditional in-person letter grading education that was paid for and expected.

57.     Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

58.     Access to facilities such as class rooms, libraries, laboratories, computer labs, and study rooms, are also integral to a college education, and access to the myriad activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and materials parts of the basis upon which the University can charge the tuition it charges, are not being provided.

59.     The University has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the Terms during the period it moved to subpar on-line distance learning.

60.     Nor has the University refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the Terms even though it limited access to or ceased the services and facilities for which the Mandatory Fees were intended to pay.

61.     There are also members of the Class who were not able to move out prior to the strict move-out dates who should be entitled to a pro-rated portion of housing fees after moving out.

62.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Terms after classes moved from in-person to online and facilities were closed or severally limited, and a pro-rated refund of housing for any students who were unable to move out prior to the move-out dates.

***_In Response to the COVID-19 Pandemic, the University Seized Plaintiff's and the Class Members'_***
***_Property Without Notice or Due Process._***

63.     When Defendant elected to seize Plaintiff's and the Class members' property, they did so without notice or due process.

64.     The Takings Clause of the Fifth Amendment, through the Fourteenth Amendment, prohibits states from taking private property for public use without just compensation.

65.     Core common law property rights that predate the Constitution are protected by the Takings Clause.

66.     For hundreds of years, the common law has recognized that there is a property right by an owner in funds held in an account managed by another.

67.     The common law rule is that when monies are paid in anticipation of receiving some service, but circumstances thereafter render it impossible for those services to be provided, the recipient is precluded from unjustly enriching themselves by seizing and retaining the proceeds.

68.     Based on these common law rules protected by the Constitution, Plaintiff and the Class have a protected property right in all sums they paid to the University for which they received nothing, or significantly less than what they bargained for, in return.

69.     Defendant elected to seize Plaintiff's and the Class members' property under the color of state law, without notice or due process, which failure to provide the same violates due process standards set forth in the California and United Stated Constitutions.

70.     Defendant is obligated to uphold the California and United States Constitutions, as they are instrumentalities of the state.[28]

71.     No statute, rule, or practice could authorize Defendant to withhold that property from Plaintiff and the Class without violating the Takings Clause of the Fifth Amendment.

72.     Defendant's conduct violated the California Constitution, Article I, §§ 7, 19 and 20, and the United States Constitution's Fifth and Fourteenth Amendments.

73.     Defendant has no authority, either under the color of Article IX, Section 9 of the California Constitution or otherwise, to seize property that rightfully belongs to another. *See Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005); *Suever v. Connel*, 439 F.3d 1142 (9th Cir. 2006); *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018), reh'g en banc denied, 918 F.3d 644 (9th Cir. 2019), cert. denied, *Guerin v. Fowler*, No. 18-1545 (U.S., Oct. 15, 2019).

---

[28] *BV Eng'g*, 858 F.2d at 1395.

74.     Plaintiff's and the Class members' property remains in Defendant's possession and can readily be returned upon Defendant directing the University to do so.

75.     Plaintiff has never made a knowing and voluntary waiver of his constitutional rights to be paid just compensation for the taking of his property rights in those funds.

76.     Consequently, Defendant, under the color of state law, has seized and retained property that is beyond their statutory and constitutional authority. These actions are *ultra vires* and unconstitutional.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All persons who paid tuition, housing (for those living on campus), and/or the Mandatory Fees for a student to attend in-person class(es) during the Terms at one of the campuses in the University of California system, but had their class(es) moved to online learning (the "Class").

78.     Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

79.     Plaintiff reserves the right to modify or amend the definition of the proposed Class, if necessary, before this Court determines whether certification is appropriate.

80.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

81.     The requirements of Rule 23(a)(1) have been met. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, the University has reported that 285,216 students were enrolled for the 2019-2020 academic year.[29] The number of students enrolled in the Summer or future Terms is unknown to Plaintiff. The identity of all such students is known to the Defendant and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved

---

[29] https://www.universityofcalifornia.edu/infocenter/fall-enrollment-glance

notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

82.     The requirements of Rule 23(a)(2) have been met.  There are questions of law and fact common to the members of the Class including, without limitation:

      a.     Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, housing, as well as access to certain facilities and services throughout the Terms;

      b.      Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after mid-March 2020;

      c.     Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to issue pro rata refunds of fees paid for University housing for students who could not vacate prior to the strict move-out date;

      d.     Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

      e.     Whether Defendant complied with the Constitutional requirements for seizing and retaining Plaintiff's and the Class members' property without providing the services that the tuition, housing, and Mandatory Fees were intended to cover;

      f.     Whether Defendant afforded Plaintiff and the other Class members notice and due process before seizing and retaining their property;

      g.     Whether Defendant is unjustly enriched by retaining a portion of the tuition, housing, and Mandatory Fees during the period of time the Universities have been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education, housing, and access and the services and facilities for which the Mandatory Fees were paid;

      h.     Whether Defendant intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus

CLASS ACTION COMPLAINT

events, strongly encourage students to stay away from campus, and discontinued services for which the tuition, housing, and Mandatory Fees were intended to pay, all while retaining the tuition, housing fees, and Mandatory Fees paid by Plaintiff and the Class; and

     i.    The amount of damages and other relief to be awarded to Plaintiff and the Class members.

83.    The requirements of Rule 23(a)(3) have been met.  Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid, housing, and access to the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

84.    The requirements of Rule 23(a)(4) have been met.  Plaintiff is an adequate class representative because his interests do not conflict with the interests of the other Class members who he seeks to represent, Plaintiff has retained competent counsel who are experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

85.    Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(On Behalf of Plaintiff and the Class)**

86.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

87.     Plaintiff brings this claim individually and on behalf of the members of the Class.

88.     By paying the University tuition, housing, and the Mandatory Fees for the Terms, the University agreed to, among other things, provide an in-person and on-campus live education, housing, as well as access to the services and facilities to which the Mandatory Fees they paid pertained throughout the Terms.  As a result, Plaintiff and each member of the Class entered into a binding contract with the University.

89.     The University has failed to provide this contracted for in-person and on-campus live education, University housing, as well as the services and facilities to which the Mandatory Fees pertained throughout the Terms, yet has retained monies paid by Plaintiff and the Class for a live in-person education, housing, and access to these services and facilities during the Terms.  Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

90.     Plaintiff and the members of the Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid during the remainder of the Terms, as well as housing fees for those Class members who moved out after the strict move-out date.

91.     The University should return such portions to Plaintiff and each Class Member.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF 42 U.S.C. § 1983**

**(On Behalf of Plaintiff and the Class)**

92.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the Class.

94.     Defendant is an instrumentality of the State of California.[30]

---

[30] *BV Eng'g*, 858 F.2d at 1395.

CLASS ACTION COMPLAINT

95.     The Due Process Clause of the United States Constitution prohibits the State of California and the governmental agencies that it forms, such as the Defendant and University, from depriving citizens of a protected property interest without due process of law.

96.     Plaintiff and the Class members had a constitutionally protected property interest in the tuition, housing, and Mandatory Fees for the Terms which were earmarked for in-person education, on-campus housing, and services and facilities that were not available to them, due to the COVID-19 pandemic and the University's reaction thereto.

97.     Defendant took action affecting Plaintiff and the other Class members' constitutionally protected property interest by seizing and retaining the proceeds from Plaintiff and the other Class members' payment of tuition, housing, and Mandatory Fees.

98.     Defendant deprived Plaintiff and the Class members of their protected property interests without due process of law by:

    a.      Failing to provide timely notice to Plaintiff and the Class, whose identity and contact information Defendant either knew, or by exercise or reasonable diligence should have known, of the refundable nature of the tuition, housing, and Mandatory Fees.

    b.      Failing to design and implement criteria by which the tuition, housing, and Mandatory Fees can be refunded to Plaintiff and the Class in light of the University ceasing or severally limiting all on-campus in-person lectures, housing, and activities due to the COVID-19 pandemic; and

    c.      Failing to design and implement a mechanism by which Plaintiff and the other Class members can obtain a refund of the tuition, housing, and Mandatory Fees in light of the University ceasing or severally limiting all on-campus in-person lectures, housing, and activities due to the COVID-19 pandemic.

99.     Defendant's failure to comply with the requirements of the Due Process Clause of the United States Constitution in the manners outlines above has resulted in substantial detriment to the Plaintiff and the Class.

100.    Moreover, pursuant to the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation."

101.     Defendant violated the Takings Clause in the Fifth Amendment, applied through the Fourteenth Amendment, by failing to return to Plaintiff and the Class that portion of the tuition, housing, and Mandatory Fees for which they received no benefit.

102.     Neither Plaintiff nor the Class members have made a knowing and voluntary waiver of their constitutional rights under the Fifth Amendment to be paid just compensation for the taking of their property right in those funds.

103.     Plaintiff and the Class are entitled to just and reasonable compensation for the taking of their property.

**THIRD CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and the Class)**

104.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

105.     Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief.

106.     Plaintiff and members of the Class conferred a benefit on the University in the form of tuition, housing, and Mandatory Fees paid for the Terms. The payment of the tuition, housing, and Mandatory Fees were to be in exchange for an in-person and on-campus live educational experience, housing, and for services and facilities to which the Mandatory Fees pertained throughout the Terms.

107.     The University has retained the full benefit of the tuition and Mandatory Fees payments by Plaintiff and the members of the Class for the Terms, yet has failed to provide the quality of education and services and facilities for which tuition and the Mandatory Fees were paid, including those for an in-person and on-campus live education, and full access to the University's services and facilities.  In addition, the University has retained the full benefit of the housing fees paid by those Class members who were unable to move out prior to the strict move-out dates.

108.     The University's retention of the portion of the tuition and Mandatory Fees during the period of time the University moved to a remote online education program and closed or limited access to services and facilities, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were

paid, is unjust and inequitable under the circumstances.  Similarly, the University's retention of the portion of the value of housing fees for students who moved out after the strict move-out dates, is also unjust and inequitable.

109.     Accordingly, the University should return the prorated portion of the tuition and Mandatory Fees that Plaintiff and the Class members each paid during the Terms after it switched to online remote learning and ceased activities and access to facilities, as well as any housing fees for students who were unable to move out prior to the strict move-out dates.

**FOURTH CLAIM FOR RELIEF**

**CONVERSION**

**(On Behalf of Plaintiff and the Class)**

110.     Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

111.     Plaintiff brings this claim individually and on behalf of the members of the Class.

112.     Plaintiff and members of the Class have a right to the services, facilities, housing, and face to face instruction that was supposed to be provided in exchange for their payments of tuition, housing, and Mandatory Fees to the University.

113.     The University intentionally interfered with the rights of the Plaintiff and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, and discontinued services for which the Mandatory Fees were intended to pay, all while retaining the tuition, housing, and Mandatory Fees paid by Plaintiff and the Class.

114.     Class members demanded the pro-rata return of their tuition, housing, and Mandatory Fees for the period of time in the Terms when the University switched to remote online learning and stopped providing the services for which the Mandatory Fees were intended to pay.

115.     The University's retention of the tuition, housing, and Mandatory Fees paid by Plaintiff and the Class without providing the services for which they paid, deprived Plaintiff and Class of the benefits for which the tuition and Mandatory Fees were paid.

116.     The University's interference with the services for which Plaintiff and the Class paid harmed Plaintiff and the Class in that the University has retained monies that rightfully belong to the Plaintiff and Class.

CLASS ACTION COMPLAINT

117.    Plaintiff and the Class are entitled to the return of the remaining pro-rated amounts of tuition and Mandatory Fees for the remainder of the Terms after it switched to online remote learning and ceased activities and access to facilities. Similarly, members of the Class are entitled to the pro-rated amount of housing after they moved out if after the strict move-out date.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff' attorneys as Class Counsel to represent the Class;

(b)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)    For compensatory damages in an amount to be determined by the trier of fact;

(d)    For an order of restitution and all other forms of equitable monetary relief;

(e)    Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(f)    Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)    Awarding such other and further relief as may be just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of any and all issues in this action so triable of right.

Dated: July 2, 2020          **CARLSON LYNCH LLP**

By:  */s/Eric D. Zard*
Eric D. Zard (323320)
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    619-762-1900
Fax:    619-756-6991
ezard@carlsonlynch.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARLSON LYNCH LLP**
Gary F. Lynch
Edward W. Ciolko
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel.:    (412) 322-9243
Fax:     (412) 231-0246
glynch@carlsonlynch.com
eciolko@carlsonlynch.com

*Counsel for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT